AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### Northern District of New York

<table>
<tr><td>

In the Matter of the Search of<br>
*(Briefly describe the property to be searched or identify the person by name and address)*<br>
**A silver Nubia in a black case, evidence bag: A8983496; IMEI: 865604060035899, currently located at the Champlain Border Patrol Station in Champlain, New York as further described in Attachment A**

</td><td>

)<br>
)<br>
)<br>
)<br>
)<br>
)

</td><td>

Case No. **8:24-MJ- 220  (GLF)**

</td></tr>
</table>

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**A silver Nubia in a black case, evidence bag: A8983496; IMEI: 865604060035899, currently located at the Champlain Border Patrol Station in Champlain, New York as further described in Attachment A**

located in the Northern District of New York, there is now concealed *(identify the person or describe the property to be seized)*:
**See Attachment B**

The basis for the search under Fed. R. Crim. P. 41(c) is (check one or more):
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| **Title 8, United States Code, Section 1326(a)** | **Re-entry after deportation** |

The application is based on these facts:
**See Attached Affidavit**

☐ Continued on the attached sheet.
☒ Delayed notice of 30 days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

**Nicholas A. Bowden, Border Patrol Agent**
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by Telephone.

Date: **APRIL 29, 2024**

_____
*Judge's signature*

City and state: **Plattsburgh, New York**

**Hon. Gary L. Favro, U.S. Magistrate Judge**
*Printed name and title*

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION FOR A SEARCH WARRANT FOR A SILVER NUBIA IN A BLACK CASE, EVIDENCE BAG: A8983496; IMEI: 865604060035899, CURRENTLY LOCATED AT THE CHAMPLAIN BORDER PATROL STATION IN CHAMPLAIN, NEW YORK | Case No.   8:24-MJ-220 (GLF) |

### AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Nicholas A. Bowden, being first duly sworn, hereby depose and state as follows:

#### INTRODUCTION AND AGENT BACKGROUND

1.      I am a Border Patrol Agent of the United States Border Patrol ("USBP"), and have been so employed since July 31, 2017.  Currently, I am assigned to the Champlain, New York Station.  I make this affidavit in support of an application for a search warrant authorizing the search of a Silver Nubia cellular phone in a black case in sealed evidence bag A8983496, with IMEI 865604060035899 (hereinafter, the "Device"), as more fully described in Attachment A, which is currently in law enforcement's possession, as well as the extraction from the Device of electronically stored information, as more fully described in Attachment B.  I make this affidavit based upon my personal knowledge and upon information received by me from other law enforcement officials.

2.      I have personally participated in the investigation of the offenses set forth below. As a result of my participation and review of past and present reports made by agents of the USBP, I am familiar with the facts and circumstances of this investigation. The statements and

-1-

facts contained in this affidavit are based upon my personal participation in this investigation, information provided by agents of the USBP, analysis of documents, my experience and training as a Border Patrol Agent with the USBP, and the experience and training of other agents involved in this investigation.

3.    Since this affidavit is being submitted for the limited purpose of securing authorization to execute search warrants on various electronic devices, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause for obtaining authorization to execute the search warrants.

## IDENTIFICATION OF THE SUBJECT ELECTRONICS TO BE EXAMINED

4.    The Device to be searched is a Silver Nubia cellular phone in a black case in sealed evidence bag A8983496, with IMEI 865604060035899, as described in Attachment A.

5.    The Device is currently in storage at the United States Border Patrol Station in Champlain, New York. I understand from the investigation and the procedures of the Champlain Border Patrol Station that the Device has been stored in a manner in which its contents are and should be, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the United States Border Patrol.

6.    The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B. Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that violations of Title 8, United States Code, Sections 1326(a) (re-entry after

deportation) has been committed by Rudee UREY. There is also probable cause to search the Device described in Attachment A, for evidence of these crimes as described in Attachment B.

## PROBABLE CAUSE

7.     On April 25, 2024, United States Border Patrol Agents were conducting line watch operations in the Champlain Border Patrol Station's area of responsibility. At approximately 7:30 a.m., Swanton Sector Radio dispatch notified Champlain Agents of a citizen report of a suspicious male in the area of 735 Eddy Road in Mooers Forks, New York. Agents responded to the area and located a person, later identified as UREY, Rudee (DOB: 11/27/1980), standing on the porch of 735 Eddy Road, which is a private residence located approximately within half a mile of the U.S.-Canadian border.

8.     The Agent approached UREY and identified himself as a United States Border Patrol Agent and conducted an immigration inspection. UREY falsely stated his name was "Chris Wah" and gave a date of birth of January 16, 1984, which was later determined to be false. UREY claimed he was born at the University Hospital in Philadelphia. The agent contacted Swanton Sector Radio dispatch and requested records on the name and date of birth given by UREY. No results were found from the records checks.

9.     The Agent again asked where UREY was born, and UREY now claimed he was born in Liberia and that he was a citizen of the United States but could not remember when he became a naturalized citizen. UREY made other contradictory statements during his conversation with the Agent, including about why he was on the porch of the 735 Eddy Road residence and where he was going. At one point, UREY said that he was waiting there for his sister, but later he said he was waiting for his brother. At another point, UREY said that he was friends with the

homeowner and had been staying there, but later he said that only his sister knew the homeowner. Throughout the Agent's questioning, UREY was texting someone on his phone. Due to UREY's initial deceptive statements and his location near the border, he was detained pending biometric records checks at the Champlain Border Patrol Station. The homeowner confirmed, when interviewed, that UREY had knocked on his door but that he did not know UREY and that UREY had not been staying there.

10. While talking with the homeowner, a black sedan with a New Jersey license plate drove past the residence. The driver and passenger looked straight ahead and did not look at the agent or the homeowner standing near the side of the road. The driver of the vehicle appeared to be a younger male of Middle Eastern decent. Currently, it is a known smuggling trend in this area that Turkish nationals living in New Jersey coordinate and pick up people from African countries, who have illegally entered the United States other than at Ports of Entry and who have not been inspected by an immigration official. This potential pick-up vehicle matches the claims UREY made that a friend from New Jersey was coming to pick him up.

11.    At the station, UREY's biographical information and fingerprints were entered into Department of Homeland Security databases, and he was identified as Rudee UREY. Record checks revealed that UREY did not have any immigration documentation that would allow him to be within the United States legally. Record checks further revealed UREY had been previously ordered removed from the United States. Specifically, on June 1, 2011, UREY was issued a final order of removal from the United States by an Immigration Judge. On November 8, 2023, UREY was fingerprinted and positively identified in Canada.

-4-

12.     UREY was issued his Miranda warnings, and he indicated that he did not wish to speak further with law enforcement without his lawyer present. No further questions were asked.

13.     A search of relevant immigration records confirmed that UREY has not sought or obtained the express permission of the Attorney General, or his successor, the secretary of Homeland Security, to return to the United States following his previous removal in 2011.

14.     At the time of arrest, the Device described in Attachment A was found on UREY's person and seized by Border Patrol.

15.     Based on my training and experience in this and other cross-border criminal investigations I have been involved with, including individuals entering the United States illegally, individuals crossing the border illegally will often communicate and coordinate with someone to pick them up once in the United States or to inform them that they successfully crossed the border via cellular telephone. Individuals involved in crossing the border illegally often use a cellular telephone's GPS functions to search for and map out potential crossing locations.  An additional function of cellular telephones that can be utilized by individuals crossing illegally includes the camera, individuals will often take photos of where they are crossing the border illegally.   Smartphones, such as this Device can also be used to access social media.  Based on my training, knowledge and experience of alien smuggling, I know that social media platforms, such as Facebook, are often used by smugglers to find customers and for communication between smugglers and aliens illegally entering the United States.

16.     The Device is currently in the lawful possession of the United States Border Patrol and has been since April 25, 2024.   I seek this warrant to be certain that further examination of the Device will comply with the Fourth Amendment and other applicable laws.

17.    Based on the foregoing, it is respectfully requested that a search warrant be issued for the Device which would allow for searches of all electronically stored information therein, including but not limited to: (1) listings of incoming and outgoing calls; (2) stored telephone and address directories; (3) direct connect and identification numbers; (4) all pictures and videos; (5) audio recordings relating to entry without inspection alien smuggling, and transporting aliens and conspiracy to transport aliens; (6) voice mail recordings relating to entry without inspection alien smuggling, and transporting aliens and conspiracy to transport aliens; (7) all GPS map or direction data; and (8) all instant messaging and related stored communications.

## TECHNICAL TERMS

18.    Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing

dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the Device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

-7-

d.  GPS:  A GPS navigation device uses the Global Positioning System to display its
current location.  It often contains records the locations where it has been.  Some
GPS navigation devices can give a user driving or walking directions to another
location.  These devices can contain records of the addresses or locations involved
in such navigation.  The Global Positioning System (generally abbreviated
"GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite
contains an extremely accurate clock.  Each satellite repeatedly transmits by radio
a mathematical representation of the current time, combined with a special
sequence of numbers.  These signals are sent by radio, using specifications that
are publicly available.  A GPS antenna on Earth can receive those signals.  When
a GPS antenna receives signals from at least four satellites, a computer connected
to that antenna can mathematically calculate the antenna's latitude, longitude, and
sometimes altitude with a high level of precision.

e.  PDA:  A personal digital assistant, or PDA, is a handheld electronic device used
for storing data (such as names, addresses, appointments or notes) and utilizing
computer programs.  Some PDAs also function as wireless communication
devices and are used to access the Internet and send and receive e-mail.  PDAs
usually include a memory card or other removable storage media for storing data
and a keyboard and/or touch screen for entering data.  Removable storage media
include various types of flash memory cards or miniature hard drives.  This
removable storage media can store any digital data.  Most PDAs run computer
software, giving them many of the same capabilities as personal computers.  For

example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

19.  Based on my training, experience, and research, I know that the cellular telephones have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. Further, I know that the GPS device has capabilities that allow it to serve as a GPS navigation device. In my training and experience,

-9-

examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

20.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

21.    *Forensic evidence.*  This application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device:

    a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b.  Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

-10-

d.  The process of identifying the exact electronically stored information on storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

22.  *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

23.  *Manner of execution.* Because this warrant seeks only permission to examine a Device that is already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto premises. Further, I know that Border Patrol agents work on various shifts, including overnight shifts, so the extraction might be assigned to an agent who is

on duty at night. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

24.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device more fully described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

Nicholas A. Bowden
United States Border Patrol

I, the Honorable Gary L. Favro, United States Magistrate Judge, hereby acknowledge that this affidavit was attested by the affiant by telephone on April 29, 2024, in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

HON. GARY L. FAVRO
UNITED STATES MAGISTRATE JUDGE

-12-

## ATTACHMENT A
### Property to be Searched

1.    The property to be searched is a Silver Nubia cellular phone in a black case in sealed evidence bag A8983496, with IMEI 865604060035899 (the "Device").

2.    The Device is currently located at the United States Border Patrol Station in Champlain, New York.

3.    This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.  Some of the above-described property is data that will be contained on electronic and machine-readable media which is not readable in its present state.  Your applicant requests that the Court give authorization for searching law enforcement officers to seize, listen to, read, and maintain the above-described property, and to convert it to human-readable form as necessary. I further request that such warrant authorize the Device to be subject to any forensic examination by the authorized law enforcement officers, or any other entity who may possess the technology to complete the examination.

## ATTACHMENT B

### Particular Things to be Seized

1.      All records on the Device described in Attachment A that relate to violations of 8 U.S.C. § 1326(a) (re-entry after deportation) which involved Rudee UREY and other co-conspirators, including:

   a.  Listings of incoming and outgoing calls with corresponding date/time of calls;

   b.  Stored telephone and address directories;

   c.  Direct connect and identification numbers;

   d.  Pictures and videos;

   e.  All audio recordings;

   f.  All voice mail recordings;

   g.  All location and GPS data;

   h.  All instant messaging and related stored communications;

   i.  All SMS messages and related stored communications; and

   j.  Any other notations or electronic storage of any kind.

2.      Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

−14−

a.  Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.